CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JAN 1 5 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERRY J. MOORE, | ) |
| | ) |
| Plaintiff, | ) Case No. 7:08CV00614 |
| | ) |
| v. | ) |
| | ) MEMORANDUM OPINION |
| CORRECTIONS OFFICER J. MILLER, | ) |
| ET AL., | ) By: Glen E. Conrad |
| | ) United States District Judge |
| Defendants. | ) |

Plaintiff Terry J. Moore, a Virginia inmate proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, plaintiff alleges that the defendant prison officials at Red Onion States Prison ("Red Onion") used excessive force against him and deprived him of liberty interests without due process when they held him in ambulatory restraints for 26 hours. He seeks monetary, declaratory, and injunctive relief. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

## Background

Moore alleges the following sequence of facts in his complaint. On December 13, 2007, Moore placed his arm in the "chuck hold box" and told Officers Miller, Brown, and Taylor to contact the sergeant for him. The officers leaned on the box, applying pressure to Moore's arm and

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

threatened to put him in ambulatory restraints if he did not remove his arm from the box. Moore refused, using profanity, and said he would not move his arm until he was allowed to speak to the sergeant. This standoff continued for five or ten minutes. Then, Miller threatened to charge Moore with spitting on him. Moore used profanity again, leaned into the crack of the door, and made a spitting sound. Moore explains that the outside of his cell door has a metal belt along its side. He remembers that Miller was standing farthest away from the door crack. However, Miller called Sgt. Day and reported that Moore had spit on him through the door crack. Day told Miller to go to medical to be "checked out." Day then turned to Moore and told him that if he would pull his arm out of the box, Day would speak with him as requested. Moore did so and then spoke with Day for several minutes. Lt. Harrison called over the radio and asked Day if there was a problem. Day said, "Not now." Harrison told Day to place Moore in four-point restraints for spitting on Miller. Day told Harrison that Moore had pulled his arm out of the box as directed, but Harrison confirmed that Assistant Warden Rowlett had ordered four-point restraints for Moore. Day told Moore to "cuff up" to be placed in restraints for spitting on Miller, and Moore complied.

Moore describes the restraint process as follows. First, the inmate is ordered to remove his clothes. Then, he is cuffed and shackled with his hands in front. A chain is wrapped around the cuffs and shackles and secured with a black box over the cuffs. Once the restraint procedure is complete, the officers drape and secure a "suicide blanket" over the inmate, who is left bent slightly at the waist. Once the process is complete, the inmate is escorted to a cell where he remains for a time. Moore believes that the ambulatory restraints are used only when an inmate poses a threat to himself, another individual, or property.

- 2 -

Case 7:08-cv-00614-GEC-mfu   Document 12   Filed 01/15/09   Page 2 of 7   Pageid#: 57

After Moore was restrained in this manner, a nurse checked his cuffs, but did not loosen them after Moore told her they were too tight. Moore remained in restraints for approximately 26 hours; he calls it "sadistic torture." About 3:00 p.m., an officer escorting the nurse on pill call noticed that Moore's wrists were bleeding from the cuffs being too tight. Officers then placed Moore in "soft cuff restraints." The restraints were fully removed around 4:00 p.m. on December 14, 2007.[2]

Moore filed an informal complaint to the institutional investigator, who responded that Moore had been charged with two disciplinary infractions in connection with the restraints incident. These charges were never served on Moore and are not "on file."

Moore brings the following claims related to the restraints incident:

1. Placement of ambulatory restraints for spitting out of the side of the door was cruel and unusual punishment.

2. Because Moore received no hearing before being placed in ambulatory restraints, the officers deprived him of liberty without due process.

3. Miller falsely accused Moore of spitting on him through the door crack, and Lt. Harrison and Sgt. Day knew the accusation was false, but nevertheless carried out the punishment as ordered by the assistant warden, which was cruel and unusual punishment and a violation of due process.

Moore seeks monetary damages and an injunction directing that he be transferred to a lower security facility within thirty days from judgment in his favor in this case.

The court filed Moore's complaint conditionally and advised him of the need to amend to state specific facts about the extent of his injuries, what requests he made regarding the tightness of the cuffs, and what responses he received. Moore responded, asserting that he did not need to amend, that he had made a clear statement of his claims.

---

[2] Moore's complaint says the restraints were removed on December 14, 2008, but in other places, he says he was restrained for two days, not a year.

- 3 -

## Discussion

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Factual allegations in support of a civil claim must be enough to raise a right to relief above the speculative level and have "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, ___, 127 S. Ct. 1955, 1974 (2007).

### A. Excessive Force

The Eighth Amendment prohibits prison officials from using force unnecessarily and wantonly to inflict pain on inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986). A claim that guards used excessive force against an inmate requires a dual inquiry: (1) the objective nature of the force used and the resulting harm and (2) the subjective intent of the officers. Hudson v. McMillian, 503 U.S. 1, 7 (1992). The key inquiry under the subjective prong of this test is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 8. In making this determination, the court must balance such factors as the need for the application of force, the relationship between the need and the amount of force actually applied, and the extent of injury inflicted. Id. at 7. De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). Thus, absent the most extraordinary circumstances, an inmate cannot prevail on an excessive force claim unless he proves more than de minimis pain or injury. Id. The use of restraints to control prison inmates is not per se unconstitutional. Williams v. Benjamin, 943 F.2d 1572, 761 (4th Cir. 1991).

- 4 -

Case 7:08-cv-00614-GEC-mfu    Document 12    Filed 01/15/09    Page 4 of 7    Pageid#: 59

Moore simply does not allege that he suffered any significant injury while in restraints. He complains that the cuffs were too tight and that he immediately complained to the nurse, who checked them and thought they were fine. Later in the day, an officer noticed that Moore's wrists were bleeding and replaced the metal cuffs with soft restraints. Even after the court advised Moore of the need to state specific facts about the nature of his injuries, he failed to do so. Although he refers to ambulatory restraints as "sadistic torture," he fails to state any specific facts in support of this conclusory characterization. He does not allege facts indicating that he suffered anything more than a slight scratch and discomfort from the cuffs. He does not indicate that he sought or required medical treatment at any time during or after the restraint period. In short, Moore fails to allege facts on which he could prove that he suffered more than de minimis injury from his hours in ambulatory restraints. Thus, the court must dismiss his Eighth Amendment claim, pursuant to § 1915A(b)(1), as his allegations fail to support any such claim.[3] See, e.g., Madison v. Kilbourne, Case No. 7:04CV00639, 2006 WL 2037572, No. *6 (W.D. Va. 2006) (finding that 14-hours in ambulatory restraints was not excessive force), aff'd on this ground, opinion vacated in part and remanded as to other claims, 228 Fed. App'x 293, *1 (4th Cir. 2007).

**B. Due Process**

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." Sandin v. Conner, 515 U.S. 472, 480 (1995). (quotation

---

[3] Because Moore does not allege facts on which he could prove that he suffered any significant injury from the ambulatory restraints, his complaint also fails to state any Eighth Amendment claim that the living conditions while in the restraints were cruel and unusual. See Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993) (finding that to satisfy state Eighth Amendment claim regarding prison living conditions, inmate must show that he sustained serious or significant physical injury resulting from challenged conditions).

-5-

marks and citation omitted). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Id. at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

> [Inmates' liberty] interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 484. Changes "in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).

Moore alleges that he should have been afforded a hearing before being placed under the restrictive conditions imposed by the ambulatory restraints for such a lengthy period of time. He admits, however, that he disobeyed a direct order to remove his arm from the box in a defiant attempt to force the officers into allowing him to speak to the sergeant. He also admits that he made a spitting gesture toward Miller, in defiance of Miller's threat to place him in ambulatory restraints, and made threatening and profane remarks to the officers. He admits that ambulatory restraints are used for inmates who pose a threat to others. Balancing these factors, the court cannot find that the ambulatory restraint conditions of which Moore complains were atypical so as to give rise to a protected liberty interest under the circumstances he alleges. The court concludes that he received the exact treatment that his threatening behavior and comments warranted under the established and

-6-

Case 7:08-cv-00614-GEC-mfu Document 12 Filed 01/15/09 Page 6 of 7 Pageid#: 61

well known practice of Red Onion as a maximum security prison.[4] Madison, 2006 WL 2037572, *7 (finding that 14-hour stint in ambulatory restraints did not trigger federal due process right under Sandin). Thus, the application of ambulatory restraints did not trigger any federal due process right to a pre-restraint hearing. The court will dismiss all due process claims accordingly, pursuant to § 1915A(b)(1).

## Conclusion

For the stated reasons, the court concludes that the complaint in its entirety must be dismissed, pursuant to § 1915A(b)(1), as the allegations do not support the elements of the claims Moore asserts. An appropriate order shall be issued this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 15th day of January, 2009.

*[signature]*

United States District Judge

---

[4] Moore's case is distinguishable from the case of Williams v. Benjamin, 943 F.2d 1572 (4th Cir. 1991), in which the inmate had been involved in a prison disturbance, was sprayed with mace, and then strapped to a metal bed frame for eight hours. The Fourth Circuit found that any procedural due process claim in the Benjamin case rested squarely on the fact that restraining an inmate to a bed for hours was restricted by written policy for use in very limited circumstances. Id. at 769-70. As stated, Moore asserts that ambulatory restraints are authorized for use when an inmate poses a threat to persons or property, as he did.

- 7 -